# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **STEADY CAPITAL, LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **BUFFALO SH PARTNER I, LP and IVY** | § | |
| **FUND MANAGER, LLC** | § | |
| | § | |
| *Defendants.* | § | |

<u>**DEFENDANTS' INDEX OF STATE COURT DOCUMENTS**</u>

Pursuant to Local Rule 81, Defendants Buffalo SH Partner I, LP and Ivy Fund

Manager, LLC enclose the following documents:

1. Docket Sheet from the 240th Judicial District Court, Fort Bend County, Texas

2. Plaintiff's Original Petition and Request for Disclosure

3. Citation Issued to Defendant Buffalo SH Partner I, LP

4. Citation Issued to Defendant Ivy Fund Manager, LLC

5. Listing of Counsel of Record

1

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search  Back  Location : Fort Bend    Images Help

# REGISTER OF ACTIONS
## CASE NO. 20-DCV-273174

| | |
|---|---|
| Steady Capital, LLC v. Buffalo SH Partner I, LP and Ivy Fund Manager LLC § § § § § | Case Type: **Contract - Consumer/Commercial/Debt** <br> Date Filed: **05/01/2020** <br> Location: **240th District Court** |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant or Respondent** | **Buffalo SH Partner I, LP** <br> Dover, DE 19904 | |
| **Defendant or Respondent** | **Ivy Fund Manager LLC** <br> Lewes, DE 19958 | |
| **Plaintiff or Petitioner** | **Steady Capital, LLC** | **Tuananh Mai** <br> *Retained* <br> 713-505-1637(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | |
|---|---|---|
| 05/01/2020 | **Petition**   **Doc ID# 1** | |
| | *Plaintiff's Original Petition and Requests for Disclosure* | |
| 05/01/2020 | **Request**   **Doc ID# 2** | |
| | *Request for Process* | |
| 05/01/2020 | **Issuance**   **Doc ID# 3** | |
| | *Citation Issued to Buffalo SH Partner I, LP* | |
| 05/04/2020 | **Citation** | |
| | eService | |
| | Buffalo SH Partner I, LP | Served   05/08/2020 |
| | | Returned   05/10/2020 |
| 05/04/2020 | **Issuance**   **Doc ID# 4** | |
| | *Citation Issued to Ivy Fund Manager LLC* | |
| 05/04/2020 | **Citation** | |
| | eService | |
| | Ivy Fund Manager LLC | Served   05/08/2020 |
| | | Returned   05/10/2020 |
| 05/11/2020 | **Officers Return**   **Doc ID# 5** | |
| | *Citation Return for Buffalo SH Partner I LP Served on 5/10/20* | |
| 05/11/2020 | **Officers Return**   **Doc ID# 6** | |
| | *Citation Return for Ivy Fund Manager LLC Served on 5/8/20* | |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Plaintiff or Petitioner** Steady Capital, LLC | | |
| | Total Financial Assessment | | 308.00 |
| | Total Payments and Credits | | 308.00 |
| | **Balance Due as of 05/28/2020** | | **0.00** |
| 05/01/2020 | Transaction Assessment | | 292.00 |
| 05/01/2020 | E-filing | Receipt # 2020-10918-DCLK | Steady Capital, LLC | (292.00) |
| 05/01/2020 | Transaction Assessment | | 16.00 |
| 05/01/2020 | E-filing | Receipt # 2020-10932-DCLK | Steady Capital, LLC | (16.00) |

2

Filed
5/1/2020 9:15 AM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Ashley Alaniz

**20-DCV-273174**

CAUSE NO. _____

| | | |
|---|---|---|
| **STEADY CAPITAL, LLC** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **FORT BEND COUNTY, TEXAS** |
| | § | |
| **BUFFALO SH PARTNER I, LP and** | § | Fort Bend County - 240th Judicial District Court |
| **IVY FUND MANAGER, LLC** | § | |
| | § | |
| **DEFENDANTS.** | § | **\_\_\_\_\_th JUDICIAL DISTRICT** |

_____

### PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE
_____

Plaintiff Steady Capital, LLC files this Original Petition and Request for Disclosure and would show the Court as follows:

## I.
## DISCOVERY

1.     Discovery should be conducted under Level 2 of the Texas Rule of Civil Procedure 190.

## II.
## PARTIES

2.     Plaintiff Steady Capital, LLC ("Steady") is a Texas limited liability company with its principal place of business in Missouri City, Fort Bend County, Texas.

3.     Defendant Buffalo SH Partner I, LP ("Buffalo") is a Delaware limited partnership who may be served with process through its registered agent, Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904.

4.     Defendant Ivy Fund Manager LLC ("Ivy") is a Delaware limited liability company

who may be served with process through its registered agent, Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, Delaware 19958.

## III.
## VENUE AND JURISDICTION

5.      This Court has jurisdiction over Defendants because they conduct business in Texas, have minimum contacts in Texas, and have consented to be sued in Texas.

6.      Venue is proper in Fort Bend County, Texas, pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code because Fort Bend County is Plaintiff's residence at the time the action accrued.

7.      The Court has jurisdiction over the controversy because the damages sought are within the jurisdictional limits of the Court.

8.      Pursuant to Texas Rule of Civil Procedure 47, Plaintiff states that it seeks monetary relief monetary relief over $1,000,000.

## IV.
## FACTS/CAUSES OF ACTION

9.      Steady brings this suit against Defendants for breach of contract.  On or about April 1, 2019, Buffalo executed a promissory note, promising to pay Steady the principal sum of $6,000,000 plus interests by September 30, 2019, in connection with a loan and renewal of a loan from Steady to Buffalo.  (A true and correct copy of the Promissory Note is attached hereto and incorporated by reference as Exhibit "A.")  The maturity date of the Note was extended to March 31, 2020.  The Note has matured and remains unpaid.

10.     To secure Steady's loan, on or about April 1, 2019, Ivy executed a guaranty agreement promising to personally guarantee Steady's loan to Buffalo.  (A true and

2

Unofficial Copy

correct copy of the Guaranty Agreement is attached hereto and incorporated by reference as Exhibit "B.")

11.     As collateral for Steady's Loan, on or about April 1, 2019, Buffalo executed a membership interest pledge and security agreement, pledging and granting Steady a security interest in 100% membership interest in Ivy Buffalo I, LLC.  (A true and correct copy of the Security Agreement is attached hereto and incorporated by reference as Exhibit "C.")  Under the Security Agreement, Buffalo agreed to promptly execute and deliver any further instruments and documents or take any further action to enable Steady to perfect, protect, exercise and enforce its security interests in the pledged collateral.

12.     Defendants have defaulted on their respective obligations under the Promissory Note, Guaranty Agreement, and Security Agreement.  Despite demand, Defendants have failed to pay the Note.  Despite demand, Defendants have to failed to promptly execute and deliver any further instruments and documents or to take any further action to enable Steady to perfect, protect, exercise and enforce its security interests in the pledged collateral.

13.     As a direct and proximate result of Defendants' breach of contract, Steady has suffered actual and consequential damages within the jurisdictional limits of this Court. Plaintiff is further entitled to reasonable and necessary attorney's fees pursuant to the terms of the Note and Guaranty Agreement and Chapter 38 of the Texas Civil Practice and Remedies Code.

14.     All conditions precedent have been performed.

Unofficial Copy

## V.
## REQUEST FOR DISCLOSURE

15.     Steady requests that Defendants disclose all information and documents required

under Rule 194, Texas Rules of Civil Procedure.

## VI.
## PRAYER

WHEREFORE, Plaintiff Steady Capital, LLC respectfully requests that

Defendants Buffalo SH Partner I, LP and Ivy Fund Manager LLC be cited to appear and

answer, and that on final trial, Plaintiff has the following:

1.     Judgment against Defendant for actual and consequential damages within
       the jurisdictional limits of this Court;

2.     Pre-judgment and post-judgment interest at the rate allowed by law until
       paid;

3.     Reasonable and necessary attorneys' fees and all costs of court and
       expenses incurred by Plaintiff in the investigation and prosecution of this
       case; and

4.     Such further relief at law or in equity, to which Plaintiff may by this
       pleading or proper amendment, thereto, show itself justly entitled.

Respectfully submitted,

**MAI & NA PLLC**

*/s/ Pete Mai*
By:_____
PETE MAI
pete@mnnlawfirm.com
State Bar No. 24029702
JOHN NA
john@mnnlawfirm.com
State Bar No. 24074786
6588 Corporate Drive, Suite 188
Houston, Texas 77036

4

Telephone:     (713) 505-1637
Mobile:        (832) 660-3883
Telecopies:    (832) 553-2689

**COUNSEL FOR PLAINTIFF
STEADY CAPITAL, LLC**

Unofficial Copy

# PROMISSORY NOTE

$6,000,000.00                          Houston, Texas                          April 1, 2019

FOR VALUE RECEIVED, the undersigned, **BUFFALO SH PARTNER I, LP**, a Delaware limited partnership, as maker (hereinafter called "Maker"), promises to pay to the order of **STEADY CAPITAL, LLC**, a Texas limited liability company, as payee (hereinafter called "Payee", which term shall also refer to any subsequent owner or holder of this Note), the principal sum of SIX MILLION AND 00/100 DOLLARS ($6,000,000.00), together with interest thereon accruing on any and all principal amounts from time to time remaining unpaid, at the per annum rate hereinafter stated, said principal and interest being payable in lawful money of the United States of America at the corporate offices of Payee in Fort Bend County, Texas, at 4622 Riverstone Blvd., Missouri City, Texas 77459. This Note shall bear interest, except on past due sums, at a per annum rate equal to NINE AND 50/100 PERCENT (9.50%). Interest shall be calculated on the basis of a three hundred sixty (360)

This Note shall be due and payable as follows: Principal shall be due and payable on or before six (6) months from the date of this Note, and interest, computed on the unpaid principal balance hereof, shall be due and payable monthly as it accrues, with the first such installment of interest being due and payable one (1) month after the date hereof and continuing regularly and monthly thereafter on the same day of each succeeding month until six (6) months from the date hereof, when the entire amount hereof, principal and interest remaining unpaid, shall be due and payable (hereafter called "Original Maturity Date"), provided however, upon request by Maker, by mutual agreement between Maker and Payee, evidenced by a written instrument, the Original Maturity Date may be extended until March 31, 2020.

If Payee has not received the full amount of any installment payment due hereunder by the end of the fifth (5th) calendar day following the day upon which such installment is due, Payee may impose, and if imposed, Maker shall pay to Payee, a late charge in an amount equal to FIVE AND 00/100 PERCENT (5.00%) of the amount of such past due installment. Any late charge shall be immediately due and payable. Maker shall be required to pay a late charge only once for any particular installment due hereunder. These provisions shall not waive, modify or extend payment due dates or Maker's obligations to timely pay all installments due hereunder.

Maker may not prepay this Note in whole or in part, before its original maturity date, except for installment interest payments due hereunder, provided however, should the parties hereto agree in writing, as provided for herein, to extend the final maturity date to April 1, 2020, Maker may prepay this Note, in whole or in part, after the Original Maturity Date, and provided further, any such prepayment(s) may only be made upon thirty (30) days written notice to Payee. Once any notice of prepayment is properly made hereunder, Maker must make such prepayment within thirty-five (35) days thereafter, or Maker's prepayment privilege created by such notice shall expire. All payments hereunder, whether designated as payments of principal or interest, shall be applied first to unpaid and accrued interest, then to the discharge of any expenses or damages for which the holder of this Note may be entitled to receive reimbursement under the terms of this Note or any other instrument now or hereafter executed in connection with or as security for this Note, and last to unpaid principal. In the application of any prepayment of principal as provided for in the preceding sentence, if any principal hereof is to be paid in installments, in the absence of any written agreement between Maker and Payee, each such prepayment shall be applied to installments of principal in the inverse order of maturity. All past due sums, including principal and interest of this Note, whether due as the result of acceleration of maturity or otherwise, shall bear interest at a per annum rate equal to EIGHTEEN AND 00/100 PERCENT (18.00%) from the date the payment thereof shall have become due until the same have been fully discharged by payment. Notwithstanding any provision

Unofficial Copy

contained herein to the contrary, the Stated Rate shall not originally be, nor ever be increased to, a rate greater than EIGHTEEN AND 00/100 PERCENT (18.00%).

If any installment or payment of principal or interest of this Note is not paid when due; or if Maker or any drawer, accepter, endorser, guarantor, surety, accommodation party or other person now or hereafter primarily or secondarily liable upon or for payment of all or any part of this Note (each hereinafter called an "other liable party") shall die (if a natural person) or become insolvent (however such insolvency may be evidenced); or if Maker or any other liable party shall file a voluntary petition in bankruptcy or for relief under any provision of any federal bankruptcy law or similar law of any other jurisdiction; or if any involuntary petition under any federal bankruptcy law or similar law of any other jurisdiction shall be filed against Maker or any other liable party and such involuntary petition is not dismissed within ninety (90) days thereafter; or if Maker or any other liable party shall be adjudicated a bankrupt or insolvent; or if Maker of any other liable party shall file any petition or answer seeking for itself any arrangement, composition, winding up, liquidation, readjustment, reorganization or dissolution under any federal bankruptcy law or any applicable present or future law, statute or regulation of the United States, any state thereof or any other jurisdiction, or shall file any answer admitting the material allegations of a petition or complaint filed against Maker or any other liable party in any  such proceeding; or if Maker or any other liable party shall make an assignment for the benefit of creditors; or if any proceeding, procedure or remedy supplementary to or in enforcement of judgment shall be resorted to or commenced against Maker or any other liable party, or with respect to any property of any of them; or if any governmental authority, or any court at the instance thereof, shall take possession of any substantial part of the property of or assume control over the affairs or operations of Maker or any other liable party, or a receiver, trustee or any other judicial officer shall be appointed for or take possession of all or any substantial part of the property of, or a writ or order of attachment or garnishment shall be issued or made against, any of the property of Maker or any other liable party, or if Maker or any other liable party shall seek, consent to or acquiesce in any of the foregoing; or if any indebtedness for which Maker or any other liable party is primarily or secondarily liable shall not be paid when due or shall become due and payable by acceleration of maturity thereof, or if any event or condition shall occur which shall permit the holder of any such indebtedness to declare it due and payable upon the lapse of time, giving of notice or otherwise; or if Maker or any other liable party (if other than a natural person) shall be dissolved, wound up, liquidated or otherwise terminated, or be a party to any merger, corporate reorganization or consolidation without the written consent of Payee; or if Maker or any other liable party shall sell substantially all or any integral portion of its assets without the written consent of Payee; or if Maker or any other liable party fails to furnish financial information requested by Payee; or if Maker or any other liable party furnishes or has furnished any financial or other information or statements which are misleading in any respect; or if a default occurs under or if Maker or any other liable party violates any covenant, agreement or condition contained in any instrument now or hereafter executed in connection with or as security for this Note; or if Maker is not an individual and TWENTY-FIVE AND 00/100 PERCENT (25.00%) or more of the equity ownership of Maker (including, without limitation, corporate stock of any class or type, partnership interests including general and limited, and limited liability company interests of every kind and nature) is no longer owned by the same owners as existed as of the date hereof; or if Payee in good faith either believes the prospect of repayment of this Note is impaired or deems itself insecure; thereupon, at the option of Payee, this Note and any and all other indebtedness of Maker to Payee shall become and be due and payable forthwith without demand, notice of default or of intent to accelerate the maturity hereof, notice of acceleration, notice of nonpayment, presentment, protest or notice of dishonor, all of which are hereby expressly waived by Maker and each other liable party.

Maker and each other liable party shall be directly and primarily, jointly and severally, liable to any legal holder of this Note for the payment of all sums called for hereunder.  Maker and each other liable party hereby expressly and severally waive grace, any and all demands of any kind or nature whatsoever, any and all notices of any kind or nature whatsoever (including but not limited to notice of default, notice of non-payment, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of acceleration

Unofficial Copy

of the maturity hereof, or notice of protest), dishonor, presentment of any kind or nature whatsoever, protest, and diligence in collecting or bringing any suit on or under this Note or any other instrument now or hereafter executed in connection with or as security for this Note, whether before or after the maturity of this Note.  Maker and each other liable party agree:

(1)      that Payee or other legal holder of this Note may, at any time, and from time to time, on request of or by agreement with Maker or any other liable party, with or without notice to or the consent of Maker or any other liable party, extend the date of maturity of, renew, extend for any period or rearrange all or any part hereof;

(2)      that it will not be necessary for Payee or any holder hereof, in order to enforce payment of this Note, to first institute or exhaust its remedies against Maker or any other liable party or to enforce its rights against any security for this Note; and

(3)      to any substitution, exchange or release of any security now or hereafter given for this Note or the release of any party, in whole or in part, primarily or secondarily liable hereon, with or without notice to or the consent of Maker or any other liable party.

If in the event of default hereunder or under any other instrument now or hereafter executed in connection with or as security for this Note, this Note is placed in the hands of any attorney for collection (whether or not suit is filed), or if this Note is collected by suit or legal proceedings or through probate, bankruptcy, receivership, reorganization, arrangement or other legal proceedings, Maker and each other liable party agree to pay the reasonable attorneys' fees of Payee and the expenses of collection in connection therewith, but in no event to exceed the maximum amount permitted by applicable law.

It is the intention of the parties hereto to strictly comply with and conform to all applicable law, including usury laws.  Accordingly, notwithstanding any provision of this Note, or any security instrument or other document, instrument or agreement evidencing, securing or entered into in connection with this Note or the loan transaction evidenced hereby, it is expressly stipulated and agreed as follows:

(1)      in no event shall Maker or any other liable party be required to pay interest in excess of the maximum non-usurious contract rate of interest (determined from time to time if the applicable maximum rate is a floating rate) that Payee may charge Maker under applicable law in regard to which Maker would be prevented successfully from raising the claim or defense of usury (hereinafter called "Maximum Rate"), nor under any circumstances shall the aggregate of all consideration which constitutes interest under applicable law and taken, reserved, charged, received, contracted for, chargeable or receivable under this Note, or any security instrument or other document, instrument or agreement evidencing, securing or entered into in connection with this Note or the loan transaction evidenced hereby exceed the maximum amount of interest allowed by applicable law, and any excess interest shall be deemed a mistake and canceled automatically or, if theretofore paid, shall, at the option of the holder of this Note, either be refunded to Maker or credited on this Note or any other obligation of Maker or any other liable party to the holder hereof; and

(2)      in the event the maturity of this Note is accelerated for any reason before the due date hereof, or in the event of any prepayment hereof, then such consideration that constitutes interest under applicable law may never include or exceed more than the maximum amount allowed by applicable law, and excess interest, if any, provided for in this Note or otherwise shall be canceled automatically as of the date of such acceleration or prepayment, and, if theretofore paid, shall, at the option of the holder of this Note, either

Unofficial Copy

be refunded to Maker or credited on this Note or any other obligation of Maker or any other liable party to the holder hereof.

In determining whether or not interest paid or payable exceeds the Maximum Rate, Maker and Payee shall, to the extent permitted by applicable law, (a) characterize any non-principal payment as an expense, fee, or premium rather than as interest, (b) exclude voluntary prepayments and the effects thereof,  and (c) amortize, prorate, allocate, and spread in equal or unequal parts the total amount of interest throughout the contemplated term of the indebtedness evidenced by this note so that interest for the entire term does not exceed the Maximum Rate.

The term "applicable law", as used in this Note, shall mean the weekly ceiling from time to time in effect, as provided for in Chapter 303.002 of the Texas Finance Code, as amended, and also includes such other laws of the State of Texas and the United States, as such laws now exist or may be amended or changed in the future, or any new law enacted which is applicable to this Note or similar loans, whichever allows the greater rate of interest, provided however, it is expressly agreed that Chapter 346 of the Texas Finance Code, as amended (which regulates certain revolving credit accounts), shall not apply to this Note and the loan transaction contemplated hereby.

In addition to any other right, security interest, or remedy which Payee may have or which may be available to Payee or which may exist, arising out of or created under this Note, any other instrument now or hereafter executed in connection with or as security for this Note, statutory law, common law, equitable principles, or otherwise, Maker and each other liable party agree that:

(1)    Maker and each other liable party hereby pledge to Payee as security for the payment of any sums due hereunder and any and all other indebtedness or obligations of Maker or any other liable party, respectively, to Payee, and grant Payee a lien on and security interest in, all funds and property of Maker and each other liable party on deposit with Payee or in control or possession of Payee, it being expressly understood that the pledge and lien hereby granted and created shall be in addition to Payee's right of set off, as well as any other rights and remedies which Payee may have; and

(2)    in the event of default hereunder or under any other instrument now or hereafter executed in connection with or as security for this Note, Payee is hereby authorized at any time and from time to time, to set off (less any rebate required by law) any and all money and deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by Payee to or for the credit or the account of Maker or any other liable party and Payee may retain and apply said money, deposits or proceeds of such collections to the payment of or against any and all sums due hereunder and any and all other indebtedness or obligations of Maker or any other liable party to Payee, irrespective of whether or not Payee shall have made any demand under this Note or the instrument creating such indebtedness or obligation, and although such indebtedness or obligations may be unmatured, provided however, Payee agrees promptly to notify the party whose account has been set off after any such set off and application has been made by Payee, but, provided further, that the failure to give such notice shall not affect the validity of such set off and application thereof, it being expressly understood that the rights of Payee under this subparagraph are in addition to any other rights and remedies, including, without limitation, other rights of set off, which Payee may have.  If Maker's or any other liable party's deposits or right to receive money from Payee is also owned by someone who has not agreed to pay this Note, Payee's right of set off will apply to Maker's or such other liable party's interest in the deposit or obligation and to any other amounts Maker or such other liable party could withdraw on Maker's or such other liable party's

Unofficial Copy

sole request, signature or endorsement.  Payee's right of set off does not apply to an account or other obligation where Maker's or any other liable party's rights are only as a fiduciary, nor shall any such right of set off apply to any Individual Retirement Account, other tax deferred retirement account or any other property which is exempt by law.  Payee will not be liable for the dishonor of any check when the dishonor occurs because Payee set off any indebtedness pursuant to this subparagraph against any of Maker's or any other liable party's account, and Maker and such other liable parties agree to hold Payee harmless from any claims arising as a result of Payee's exercise of Payee's right of setoff.

Any check, draft, money order or other instrument given in payment of any portion of this Note may be accepted by the holder hereof and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the holder hereof except to the extent that actual cash proceeds of such instrument are unconditionally received by the holder and applied to this indebtedness in the manner provided elsewhere herein.

To the extent of THREE MILLION AND 00/100 DOLLARS ($3,000,000.00), this Note is given in renewal and extension, but not in discharge or novation, of the balance due on that one (1) certain Promissory Note in the original principal sum of THREE MILLION AND 00/100 DOLLARS ($3,000,000.00), dated December 31, 2018, payable to the order of Payee herein, as more fully described in and secured by a Membership Interest Pledge and Security Agreement dated December 31, 2018, executed by Maker, as debtor, in favor of Payee, as a secured party, which grants a pledge and first lien security interest in the Pledged Collateral (as herein defined) and proceeds thereof, all of which liens are hereby expressly acknowledged by Maker as valid and subsisting liens against the Pledged Collateral, and it is hereby expressly agreed that said liens are hereby renewed, extended, carried forward and continued in full force and effect against the Pledged Collateral.

This Note is the promissory note referred to in, has been issued pursuant to, is entitled to the benefits of, and/or is secured by the following:

(1)      a security interest and lien created by that certain Membership Interest Pledge and Security Agreement, of even date herewith, executed by Maker, as debtor, in favor of Payee, as a secured party, which grants a pledge and first lien security interest in the following described collateral:

(a)      ONE HUNDRED AND 00/100 PERCENT (100.00%) of the Membership Interests in **IVY BUFFALO I, LLC**, a Delaware limited liability company (hereinafter called "Pledged Collateral"), and all dividends, profits, income, cash, receipts, instruments, distributions (whether in cash or in kind property) and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Collateral; and

(b)      to the extent not covered by clause (a) above, all proceeds of any or all of the foregoing Pledged Collateral.  The term "proceeds" shall include whatever is receivable or received when Pledged Collateral or proceeds thereof are sold, exchanged, collected or otherwise disposed of, whether such disposition is voluntary or involuntary, and shall include, without limitation, proceeds of any indemnity or guaranty payable to Pledgor from time to time with respect to any of the Pledged Collateral;

Unofficial Copy

(2)     that certain Guaranty Agreement of even date herewith, executed by **IVY FUND MANAGER, LLC**, a Delaware limited liability company (hereinafter called "Ivy"), as guarantor, which guarantees, as provided in such Guaranty Agreement, the performance and payment of this Note and any other indebtedness, liabilities or obligations of every kind and nature of Maker to Payee;

(3)     that certain Loan Agreement of even date herewith, executed by Payee, Maker and Ivy, concerning various terms and conditions of the loan evidenced by this Note; and

(4)     all other security agreements, pledge agreements, collateral assignments, deeds of trust, mortgages, and other lien instruments of any nature, including those executed simultaneously herewith, and those heretofore or hereafter executed, by Maker and/or other(s) in favor of Payee as security for this Note and any other sums that Maker may owe to Payee.

Reference is hereby made to the above documents for a more particular description of the property covered thereby and for all relevant purposes.

MAKER:

**BUFFALO SH PARTNER I, LP**

By:     Ivy Fund Manager, LLC,
        its sole general partner


By: _Shaofan Zhang_____
        Shaofan Zhang, Manager and
        Chief Executive Officer

Unofficial Copy

# GUARANTY AGREEMENT

1.      The undersigned, **IVY FUND MANAGER, LLC**, a Delaware limited liability company (hereinafter called "Guarantor"), for and in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable consideration in hand paid to Guarantor, the receipt and sufficiency of which hereby acknowledged, and to induce **STEADY CAPITAL, LLC**, a Texas limited liability company (hereinafter called "Lender"), at its option, at any time or from time to time, to loan monies, with or without security, to or for the account of **BUFFALO SH PARTNER I, LP**, a Delaware limited partnership (hereinafter called "Borrower", whether one (1) or more), and at the special insistence and request of Lender, Guarantor hereby unconditionally guarantees the prompt payment at maturity of all indebtedness, obligations and liabilities of any kind of Borrower to Lender (and also to others to the extent of participations granted them by Lender), now outstanding or owing or which may hereinafter be executed or incurred, directly between Borrower and Lender or acquired outright, as a participation, conditionally or as collateral security from another by Lender, absolute or contingent, joint and/or several, secured  or unsecured, due or not due, arising by operation of law or otherwise, or direct or indirect, including indebtedness, obligations and liabilities to Lender of Borrower as a member of any partnership, syndicate, association or other group, and whether incurred by Borrower as principal, surety, endorser, guarantor, accommodation party or otherwise (hereinafter collectively called "Indebtedness").

2.      This Guaranty is an absolute, completed and continuing one, and no notice of the Indebtedness or any extension of credit already or hereafter contracted by or extended to Borrower need be given to Guarantor.  Borrower and Lender may rearrange, extend and/or renew the Indebtedness without notice to Guarantor and in such event, Guarantor will remain fully bound hereunder on such Indebtedness. Guarantor hereby expressly waives presentment, demand, protest and notice of protest and dishonor on any and all forms of such Indebtedness, and also notice of acceptance of this Guaranty, acceptance on the part of Lender being conclusively presumed by its request for this Guaranty and delivery of the same to it.

3.      Guarantor authorizes Lender, without notice or demand and without affecting his liability hereunder, to take and hold security for the payment of this Guaranty and/or the Indebtedness guaranteed, and exchange, enforce, waive and release any such security; and to apply such security and direct the order or manner of sale thereof as Lender in its discretion may determine; and to obtain a guaranty of the Indebtedness from any one (1) or more other persons, corporations or entities whomsoever and at any time or times to enforce, waive, rearrange, modify, limit or release such other persons, corporation or entities from their obligations under such guaranties.

4.      Guarantor waives any right to require Lender to (a) proceed against Borrower, (b) proceed against or exhaust any security held from Borrower, or (c) pursue any other remedy in Lender's power whatsoever.  Guarantor waives any defense arising by reason of any disability, lack of corporate authority or power, or other defense of Borrower or any other guarantor of the Indebtedness, and shall remain liable hereon regardless of whether Borrower or any other guarantor be found not liable thereon for any reason.  Until all the Indebtedness shall have been paid in full, Guarantor shall have no right of subrogation, and waives any right to enforce any remedy which Lender now has or may hereafter have against Borrower, and waives any benefit of and any right to participate in any security now or hereafter held by Lender.  Guarantor waives any rights under Chapter 34 of the Texas Business and Commerce Code, as amended.

5.      Guarantor will, within five (5) days from date of notice from Lender of Borrower's failure to pay any of the Indebtedness at maturity, pay to Lender the amount due and unpaid by Borrower.  The failure of Lender to give this notice shall not in any way release Guarantor hereunder.  Guarantor agrees that if the maturity of any Indebtedness hereby guaranteed is accelerated by bankruptcy or otherwise, such maturity shall also be deemed accelerated for the purpose of this Guaranty without demand or notice to Guarantor.

PLAINTIFF'S
EXHIBIT

**B**

Unofficial Copy

-2-

6.      It is expressly agreed that the liability of Guarantor for payment of the Indebtedness secured hereby shall be primary and not secondary.

7.      This Guaranty is and shall be in every particular available to the successors and assigns of Lender and is and shall always be fully binding upon the heirs and legal representatives of Guarantor.  This Guaranty and the rights and obligations of the parties hereunder shall be governed by and interpreted in accordance with the laws of the State of Texas.  No modification, consent, amendment or waiver of any provision of this Guaranty, nor consent to any departure by Guarantor therefrom, shall be effective unless the same shall be in writing and signed by a Vice President or higher level officer of Lender, and then shall be effective only in the specific instance and for the purpose for which given.  In case one (1)or more provisions of this Agreement shall be invalid, illegal or unenforceable in any respect under applicable law, the validity, legality and enforceability of the remaining provisions contained herein shall not be affected or impaired.

8.      Guarantor authorizes Lender to obtain credit and other information about Guarantor from third parties.  If Guarantor is a consumer, as defined in the Fair Credit Reporting Act, Guarantor authorizes Lender to obtain one (1) or more consumer credit reports about Guarantor.  If Lender has previously obtained any consumer credit report about Guarantor in connection with an application for credit by Borrower, Guarantor hereby consents to Lender obtaining such report.

9.      Guarantor acknowledges and understands there may be various non-monetary covenants and agreements existing with respect to or made in connection with the Indebtedness, and Guarantor agrees to keep and perform such non-monetary covenants and agreements in the same manner as would otherwise be required of Borrower.  Further, Guarantor further acknowledges and understands there may be various non-monetary covenants and agreements of Guarantor existing with respect to or made in connection with the Indebtedness, and Guarantor further agrees to keep and perform all such non-monetary covenants and agreements of Guarantor.

10.      If Borrower is a corporation or other non-natural entity, Guarantor shall not be liable hereunder for that portion of the Indebtedness that consists of interest over and above the maximum amount of interest that could have been contracted for and collected from Guarantor under applicable law if Guarantor had been Borrower.  Guarantor, whether a natural person or otherwise, shall not be liable hereunder or obligated to pay any amount that consists of interest over and above the maximum amount of interest that could have been contracted for and collected from Guarantor under applicable law.

11.      If Lender or its successors and assigns should commence any lawsuit, action or other legal proceedings against Guarantor to enforce this Guaranty, Lender or the person or party bringing such lawsuit, action or proceeding shall be entitled to receive from Guarantor, and Guarantor agrees to pay to Lender or such person or party, as the case may be, if Lender or such person or party shall be successful in such lawsuit, action or proceeding, the costs and expenses thereof (including attorney's fees and costs of suit).  It is expressly agreed and understood that such costs and expenses are separate from, in addition to, and are not a part of, any Indebtedness guaranteed pursuant to this Guaranty.

12.      Notwithstanding anything to the contrary contained in this Guaranty, Guarantor hereby irrevocably waives any and all rights it may now or hereafter have under any agreement or at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Lender) to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Indebtedness for any payment made by Guarantor under or in connection with the Agreement or otherwise.  With respect to, arising as a result of, or on account of any "transfer", as defined in the U.S. Bankruptcy Code (hereinafter called "Code"), to Lender, Guarantor waives

WAS1265.066.docx

Unofficial Copy

-3-

all rights and claims whatsoever, including, but not limited to, subrogation, contribution, indemnity, reimbursement, or any right to require security by which, under Texas or other law or agreement, Guarantor could be a "creditor", as defined in the Code, or the holder of a "claim", as defined in the Code, against anyone who is a "debtor", as defined in the Code, or against any property of any such "debtor". In the event any payment or transfer or giving of property by Borrower or Guarantor or any other guarantor or person to Lender is held to constitute a preference, fraudulent conveyance, or other avoidable transfer under the Code or any state law, or if for any other reason Lender is required to return such payment or property or restore the amount thereof to any person, the amount of Borrower's obligation to Lender which was reduced thereby shall be reinstated as an obligation of Borrower and Guarantor to Lender and be payable upon demand.

WITNESS THE EXECUTION HEREOF on April 1, 2019.

**IVY FUND MANAGER, LLC**, a Delaware limited liability company

By: _Shaofan Zhang_____
Shaofan Zhang, Manager and
Chief Executive Officer

Mailing Address of Guarantor:

_____

_____

WAS1265.066.docx

Unofficial Copy

## MEMBERSHIP INTEREST PLEDGE AND SECURITY AGREEMENT

This MEMBERSHIP INTEREST PLEDGE AND SECURITY AGREEMENT (the "Agreement") is made effective as of April 1, 2019 (the "Effective Date"), by and among **STEADY CAPITAL, LLC**, a Texas limited liability company ("Secured Party"), and **BUFFALO SH PARTNER I, LP**, a Delaware limited partnership ("Pledgor").

## RECITALS:

WHEREAS, Secured Party has made a loan (the "Loan") in the principal sum of SIX MILLION AND 00/100 DOLLARS ($6,000,000.00) to **BUFFALO SH PARTNER I, LP**, a Delaware limited partnership (also sometimes called the "Borrower"), which Loan is evidenced by that certain Promissory Note dated as of even date herewith in the principal amount of SIX MILLION AND 00/100 DOLLARS ($6,000,000.00) (as amended, modified or supplemented and in effect from time to time, the "Note") issued by Borrower to Secured Party pursuant to that certain Loan Agreement dated as of even date herewith (as amended, modified or supplemented and in effect from time to time, the "Loan Agreement") (this Agreement, the Loan Agreement, together with the Note, and any other documents and instruments executed in connection with the Loan being hereinafter referred to, collectively, as the "Loan Documents");

WHEREAS, as of the effective date hereof, the Pledgor is the owner of ONE HUNDRED AND 00/100 PERCENT (100.00) of the limited liability company membership interests in **IVY BUFFALO I, LLC**, a Delaware limited liability company (the "Company").

WHAREAS, the Company is the owner of FIFTY AND 00/100 PERCENT (50.00%) of the limited liability company membership interests in **HERRON DRIVE ASSOCIATES LLC**, a Delaware limited liability company (the "Project Company"), and the Company is the sole Managing Member of the Project Company.

WHEREAS, the Project Company owns and operates a student housing property commonly referred to as "Block 20", containing approximately 640 beds within approximately 224 apartments, located in Amherst, New York (the "Property").

WHEREAS, in connection with and in consideration for the Loan to Borrower (the sufficiency of which is hereby acknowledged by Pledgor), Pledgor has agreed to pledge all right, title and interest in and to the ONE HUNDRED AND 00/100 PERCENT (100.00%) of the Membership Interests it holds in the Company to Secured Party pursuant to this Agreement; and

NOW, THEREFORE, in consideration of the premises and intending to be legally bound hereby, Pledgor hereby agrees as follows:

1.     Pledge. Pledgor hereby pledges to Secured Party, and grants to Secured Party a security interest in and to the following:



PLAINTIFF'S
EXHIBIT

**C**

Unofficial Copy

-2-

(a)     ONE HUNDRED AND 00/100 PERCENT (100.00%) of the Membership Interests in the Company (the "<u>Pledged Collateral</u>"), and all dividends, profits, income, cash, receipts, instruments, distributions (whether in cash or in kind property) and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Collateral; and

(b)     to the extent not covered by clause (a) above, all proceeds of any or all of the foregoing Pledged Collateral.

For purposes of this Agreement, the term "<u>proceeds</u>" shall include whatever is receivable or received when Pledged Collateral or proceeds thereof are sold, exchanged, collected or otherwise disposed of, whether such disposition is voluntary or involuntary, and shall include, without limitation, proceeds of any indemnity or guaranty payable to Pledgor from time to time with respect to any of the Pledged Collateral.

2.     <u>Security for Obligations</u>.  This Agreement secures all of the obligations of Pledgor under the Loan Documents and this Pledge (all such obligations being collectively referred to herein as the "<u>Obligations</u>").

3.     <u>Delivery of Pledged Collateral</u>.  Secured Party shall have the right, at any time in Secured Party's discretion after an Event of Default (as defined below) and without notice to Pledgor, to make any and all filings, transfers, or registrations in the name of Secured Party or any of Secured Party's nominees, to perfect its security interest and enforcement rights with respect to any or all of the Pledged Collateral, subject only to the revocable rights specified in Section 6(a).

4.     <u>Representations and Warranties</u>.  Pledgor covenants, represents, warrants and agrees as follows:

(a)     The Membership Interests have been duly authorized and are validly issued.

(b)     Pledgor is the legal and beneficial owner of the Pledged Collateral free and clear of any liens, security interests, options or other charges or encumbrances, except for the security interest created by this Agreement.

(c)     Upon the filing of the Uniform Commercial Code Financing Statement with respect to the Pledged Collateral, the pledge of the Membership Interests pursuant to this Agreement creates a valid and perfected first priority security interest in the Pledged Collateral, securing the payment of the Obligations.

(d)     Subject to such other consents or approvals which have been obtained, no consent of any other person or entity and no authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required (i) for the pledge by Pledgor of the Pledged Collateral pursuant to this Agreement or for the execution, delivery or performance of this Agreement by Pledgor, (ii) for the perfection or maintenance of the security interest created hereby (including the first priority nature of

WAS1265.065.docx

-3-

such security interest), or (iii) for the exercise by Secured Party of the voting or other rights provided for in this Agreement or the remedies in respect of the Pledged Collateral pursuant to this Agreement (except as may be required in connection with any disposition of any portion of the Pledged Collateral by laws affecting the offering and sale of securities generally).

(e)     The Pledged Collateral constitutes ONE HUNDRED AND 00/100 PERCENT (100.00%) of the membership interests of the Company, there are no other members of the Company, and all of the membership interests of the Company are owned by Pledgor.

(f)     The Company owns FIFTY AND 00/100 PERCENT (50.00%) of the membership interests of the Project Company, the only members of the Project Company are owned by Pledgor and WISDOM B VENTURES, LLC, a _____ limited liability company, and the Company is the sole Managing Member of the Project Company.

(g)     There are no conditions precedent to the effectiveness of this Agreement that have not been either satisfied or waived.

(h)     Pledgor has, independently and without reliance upon Secured Party, and based upon such documents and information as Pledgor has deemed appropriate, made his own credit analysis and decision to enter into this Agreement.

(i)     Pledgor shall obtain the prior written consent, which consent shall not be unreasonably withheld, of Secured Party before voting or consenting to create, incur, or permit to exist any pledge, mortgage, lien, charge, encumbrance or any security interest whatsoever in or with respect to the Pledged Collateral, or any material amendment or modification of the Loan Documents.

(j)     The Company is duly organized, validly existing and in good standing under the laws of the State of Delaware.

(k)     The Project Company is duly organized, validly existing and in good standing under the laws of the State of Delaware.

(l)     No consent by the Company is necessary or required in connection with the pledge of the Pledged Collateral by Pledgor, or if required, has been obtained.

(m)     No consent by the Project Company is necessary or required in connection with the pledge of the Pledged Collateral by Pledgor, or if required, has been obtained.

5.     <u>Further Assurances</u>.  Pledgor agrees that at any time and from time to time, at the sole cost and expense of Pledgor, Pledgor will promptly execute and deliver all further reasonable instruments and documents, and take all further reasonable action, that may be necessary or desirable, or that Secured Party may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Secured Party to exercise and

Unofficial Copy

-4-

enforce Secured Party's rights and remedies hereunder with respect to any Pledged Collateral.

6.      <u>Voting Rights</u>.

(a)      So long as no Event of Default or event which, with the giving of notice or the lapse of time, or both, would become an Event of Default shall have occurred and be continuing, Pledgor shall be entitled to exercise or refrain from exercising any and all voting and other consensual rights pertaining to the Pledged Collateral or any part thereof for any purpose not inconsistent with the terms of this Agreement or any of the other Loan Documents; <u>provided</u>, <u>however</u>, that Pledgor shall, as a member, not exercise or refrain from exercising any such right if, in Secured Party's reasonable judgment, such action would have a material adverse effect on the value of the Pledged Collateral or any part thereof, and, <u>provided</u>, <u>further</u>, that Pledgor shall give Secured Party at least three (3) business days' written notice of the manner in which Pledgor intends to exercise, or the reasons for refraining from exercising, any such right, if such voting or other consensual rights, if so exercised, may materially affect the value of the Pledged Collateral.

(b)      Upon the occurrence and during the continuance of an Event of Default or an event which, with the giving of notice or the lapse of time, or both, would become an Event of Default all rights of Pledgor to exercise or refrain from exercising the voting and other consensual rights which Pledgor would otherwise be entitled to exercise pursuant to Section 6(a) shall, upon notice to Pledgor by Secured Party, cease.

7.      <u>Transfers and Other Liens; Additional Shares</u>.  Pledgor agrees that it will not (i) sell, assign (by operation of law or otherwise) or otherwise dispose of, or grant any option with respect to, any of the Pledged Collateral, or (ii) create or permit to exist any lien, security interest, option or other charge or encumbrance upon or with respect to any of the Pledged Collateral, except for the security interest under this Agreement.

8.      <u>Secured Party Appointed Attorney-in-Fact</u>.  Upon an Event of Default, Pledgor hereby appoints Secured Party as Pledgor's attorney-in-fact, with full authority in the place and stead of Pledgor and in the name of Pledgor or otherwise, from time to time in Secured Party's sole discretion, to take any action and to execute any instrument which Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement (subject to the rights of Pledgor under Section 6 of this Agreement), including, without limitation, to receive, indorse and collect all instruments made payable to Pledgor representing any dividend or other distribution in respect of the Pledged Collateral or any part thereof and to give full discharge for the same.

9.      <u>Secured Party May Perform</u>.  If Pledgor fails to perform any agreement contained herein following the expiration of any applicable grace period, Secured Party may perform, or cause performance of, any such agreement, and the reasonable expenses of Secured Party incurred in connection therewith (including attorneys' fees and expenses) shall be payable by Pledgor to Secured Party pursuant to the provisions of Section 13 hereof.

10.      <u>Secured Party's Duties</u>.  The powers conferred on Secured Party hereunder are solely to protect Secured Party's interest in the Pledged Collateral and shall not impose any duty

WAS1265.065.docx

Unofficial Copy

-5-

upon Secured Party to exercise any such powers.  Except for the safe custody of any Pledged Collateral in Secured Party's possession and the accounting for moneys actually received by Secured Party hereunder, Secured Party shall have no duty as to any Pledged Collateral, as to ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Pledged Collateral, whether or not Secured Party has or is deemed to have knowledge of such matters, or as to the taking of any necessary steps to preserve rights against any parties or any other rights pertaining to any Pledged Collateral. Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of any Pledged Collateral in Secured Party's possession if such Pledged Collateral is accorded treatment substantially equal to that which Secured Party accords Secured Party's own property.

     11.   <u>Remedies upon Default</u>.  If any Event of Default shall have occurred and be continuing:

     (a)   Secured Party may exercise in respect of the Pledged Collateral, in addition to other rights and remedies provided for herein or otherwise available to Secured Party at law or in equity, all of the rights and remedies of a secured party on default under the Uniform Commercial Code in effect in the State of Delaware or New York at that time (the "<u>Code</u>") (whether or not the Code applies to the affected Pledged Collateral), and may also, without notice except as specified below, sell the Pledged Collateral or any part thereof in one or more parcels at public or private sale, at any exchange, broker's board or at any of Secured Party's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as Secured Party may deem commercially reasonable.  Pledgor agrees that, to the extent notice of sale shall be required by law, at least ten (10) days' notice to Pledgor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification.  Secured Party shall not be obligated to make any sale of Pledged Collateral regardless of notice of sale having been given.  Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

     (b)   Any cash held by Secured Party as Pledged Collateral and all cash proceeds received by Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Pledged Collateral may, in the sole discretion of Secured Party, be held by Secured Party as collateral for, and/or then or at any time thereafter be applied (after payment of any amounts payable to Secured Party pursuant to Section 13) in whole or in part by Secured Party against, all or any part of the Obligations in such order as Secured Party shall elect.  Any surplus of such cash or cash proceeds held by Secured Party and remaining after payment in full of all the Obligations shall be paid over to Pledgor or to whomsoever may be lawfully entitled to receive such surplus.

     12.   <u>Event of Default</u>.  The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" hereunder:

     (a)   If there shall occur any breach, failure or violation by Pledgor in the payment or performance of any of Pledgor's obligations, covenants or warranties under the

WAS1265.065.docx

Unofficial Copy

-6-

Loan Documents; or

      (b)      If there shall occur any Event of Default by Pledgor of the Obligations;

13.    <u>Expenses</u>.  Pledgor will, upon demand, pay to Secured Party the amount of any and all reasonable expenses, including the reasonable fees and expenses of Secured Party's counsel and of any experts and agents, which Secured Party may incur in connection with (i) the preparation and administration of this Agreement, (ii) the custody or preservation of, or the sale of, collection from, or other realization upon, any of the Pledged Collateral, (iii) the exercise or enforcement of any of the rights of Secured Party hereunder, or (iv) the failure by Pledgor to perform or observe any of the provisions hereof.

14.    <u>Security Interest Absolute</u>.  All rights of Secured Party and security interests hereunder, and all obligations of Pledgor hereunder, shall be absolute and unconditional irrespective of:

      (a)      any manner of application of collateral, or proceeds thereof, to all or any of the Obligations, or any manner of sale or other disposition of any collateral for all or any of the Obligations or any other assets of Pledgor; or

(b) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Pledgor or a third party pledgor.

15.    <u>Amendments, Etc</u>.  No amendment or waiver of any provision of this Agreement, and no consent to any departure by Pledgor therefrom, shall in any event be effective unless the same shall be in writing and signed by Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

16.    <u>Notices</u>.    Any notice, election, demand, request or other document or communication required or permitted under this Agreement shall be in writing and shall be deemed sufficiently given only if delivered in person or sent by certified or registered mail, postage prepaid, return receipt requested, addressed to Secured Party or Pledgor, as the case may be, as follows:

<u>If to Pledgor</u>:

      Ivy Fund Manager LLC
      Attn:  Shangxuan Tan
      140 Shawmut Avenue, Suite 2A
      Boston, MA  02118
      Email: tanshangxuan@oc-ventures.com

<u>If to Secured Party</u>:

      Steady Capital, LLC
      Attn: Alex Weng

WAS1265.065.docx

Unofficial Copy

-7-

4622 Riverstone Blvd.
Missouri City, Texas  77459
E-mail:  alex.weng@gpi-investment.com

17. <u>Continuing Security Interest; Assignments under Credit Agreement</u>.  This Agreement shall create a continuing security interest in the Pledged Collateral and shall (i) remain in full force and effect until the Pledgor's payment in full of, or his express written release by Secured Party from, the Obligations and all other amounts payable under this Agreement, (ii) be binding upon and inure to the benefit of Pledgor, and Pledgor's respective heirs, legal representatives, successors and assigns, and (iii) inure to the benefit of, and be enforceable by, and be binding upon Secured Party and Secured Party's heirs, legal representatives, successors, transferees and assigns.  Without limiting the generality of the foregoing clause (iii), Secured Party may assign or otherwise transfer all or any portion of Secured Party's rights under the Loan Documents to any other person or entity, and such other person or entity shall thereupon become vested with all the benefits in respect thereof granted to Secured Party herein or otherwise and charged with the obligations and responsibilities of Pledgor thereunder.  Upon the payment in full of all amounts due and payable under this Agreement and the release of Pledgor from the Obligations, the security interest granted hereby shall terminate and all rights to the Pledged Collateral shall revert to Pledgor.  Upon any such termination, Secured Party will, at Pledgor's expense, promptly return to Pledgor such of the Pledged Collateral as shall not have been sold or otherwise applied pursuant to the terms hereof and execute and deliver to Pledgor such documents as Pledgor shall reasonably request to evidence such termination.

18. <u>Governing Law; Terms</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas.  Pledgor, on behalf of himself and his respective heirs, legal representatives, successors and assigns, irrevocably consents that any legal action or proceeding against them under, arising out of, or in any manner relating to, this Agreement, may be brought in any court presiding in the State of Texas.  Pledgor, by execution and delivery of this Agreement and on behalf of himself and his respective heirs, legal representatives, successors and assigns, expressly and irrevocably consents and submits to the personal jurisdiction of any of such courts in any such action or proceeding.  Pledgor, on behalf of himself and his respective heirs, legal representatives, successors and assigns, further irrevocably consents to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to any of them by hand or by certified mail, delivered or addressed to Pledgor's address set forth herein.  Pledgor, on behalf of himself and his respective heirs, legal representatives, successors and assigns, hereby expressly and irrevocably waives any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue or forum non conveniens or any similar basis. Nothing in this paragraph shall affect or impair in any manner or to any extent the right of Secured Party or Secured Party's heirs, legal representatives, successors or assigns, to commence legal proceedings or otherwise proceed against Pledgor in any jurisdiction or to serve process in any manner permitted by law.  Pledgor hereby waives all right to require a marshalling of assets by Secured Party.

19. <u>Irrevocable Proxy</u>.  Pledgor hereby irrevocably constitutes and appoints Secured Party, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote

WAS1265.065.docx

-8-

the Membership Interests and any and all other equity interests in the Companies, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired (the Membership Interests together with all such other equity interests, the "Borrower's Interests"), with respect to any Article 8 Matter (as hereinafter defined). The foregoing proxy shall include the right to sign Pledgor's name (as member of Property Owner) to any consent, certificate or other document relating to each Company that applicable law may permit or require, to cause the Borrower's Interests to be voted in accordance with the preceding sentence. Pledgor hereby revokes all other proxies and powers of attorney with respect to the Borrower's Interests that Pledgor may have appointed or granted, to the extent such proxies or powers extend to any Article 8 Matter. Pledgor will not give a subsequent proxy or power of attorney (and if given, will not be effective) or enter into any other voting agreement with respect to the Pledgor's Interests with respect to any Article 8 Matter. Unless and until there is an Event of Default, Secured Party will not exercise his voting rights under this proxy. As used herein, "Article 8 Matter" means any action, decision, determination or election by each Company's or its member(s) that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Uniform Commercial Code, and all other matters related to any such action, decision, determination or election.

**THE PROXIES AND POWERS GRANTED BY PLEDGOR PURSUANT TO THIS AGREEMENT ARE COUPLED WITH AN INTEREST AND ARE GIVEN TO SECURE THE PERFORMANCE OF THE PLEDGOR'S OBLIGATIONS UNDER THIS PLEDGE AGREEMENT**

[THE NEXT PAGE IS THE SIGNATURE PAGE]

WAS1265.065.docx

Unofficial Copy

-9-

IN WITNESS WHEREOF, Pledgor has caused this Agreement to be duly executed and delivered as of the date first above written.

PLEDGOR:

**BUFFALO SH PARTNER I, LP**, a
Delaware limited partnership

By:    Ivy Fund Manager, LLC, a Delaware
       limited liability company, its sole
       general partner

By:    *Shaofan Zhang*
       Shaofan Zhang, Manager and
       Chief Executive Officer

SECURED PARTY:

**STEADY CAPITAL, LLC** a Texas limited
liability company

By:
Printed Name: Ruoxu Hu
Title: Manager and Chief Executive Officer

Unofficial Copy

**3**

Filed
5/11/2020 12:00 AM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Katherine Cavazos

## SERVICE FEE NOT COLLECTED
## BY DISTRICT CLERK

### THE STATE OF TEXAS

### CITATION

TO:   **BUFFALO SH PARTNER I, LP**
      **REGISTERED AGENT COGENCY GLOBAL INC**
      **850 NEW BURTON ROAD SUITE 201**
      **DOVER DE  19904**

**NOTICE:**

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE** filed on **May 01, 2020,** a default judgment may be taken against you.

The case is presently pending before the **240TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **20-DCV-273174**  and is styled:

**STEADY CAPITAL, LLC V. BUFFALO SH PARTNER I, LP AND IVY FUND MANAGER LLC**

The name and address of the attorney for **PLAINTIFF** is:

**TUANANH MAI**
**MAI & NA PLLC**
**6588 CORPORATE DRIVE SUITE 188**
**HOUSTON TX  77036**
**713-505-1637**

The nature of the demands of said **PLAINTIFF** is shown by a true and correct copy of the **PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 4th day of May, 2020.**

**DISTRICT CLERK BEVERLEY MCGREW WALKER**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _Katherine Cavazos_
Deputy District Clerk KATHERINE CAVAZOS
Telephone: (281) 344-3959

20-DCV-273174                                          240th Judicial District Court
Steady Capital, LLC v. Buffalo SH Partner I, LP and Ivy Fund Manager LLC

**OFFICER'S OR AUTHORIZED PERSON'S RETURN**

Came to hand on the _____ day of _____, 20__, at _____ o'clock _____M.

Executed at _____, within the County of _____

_____, at _____o'clock _____M. on the _____ day of _____

_____, 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy

of the petition, having first attached such copy of such petition to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving __ citation at $80.00 each  $_____

_____

Name of Officer or Authorized Person

_____County, Texas

By:_____

Signature of Deputy or Authorized Person

*State day and hour and place of serving each person.

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The return is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,

(First, Middle, Last)

my date of birth is_____, and my address is _____

(Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the _____

day of _____.

_____

Declarant / Authorized Process Server

_____

(Id # & expiration of certification)

**ORIGINAL**

Citation issued to Buffalo SH Partner I, LP on 5/4/2020.

## CAUSE NO. 20-DCV-273174

| | | |
|---|---|---|
| Steady Capital, LLC | § | IN THE COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| Buffalo SH Partner I,LP, et al | § | |
| Defendant. | § | 240TH JUDICIAL DISTRICT COURT |

### AFFIDAVIT OF SERVICE

"The following came to hand on **May 4, 2020, 1:00 pm,**

#### CITATION - PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE,

and was executed at **850 New Burton Rd, Dover, DE** 19904 within the county of **Kent** at **11:28 AM** on **Fri, May 08 2020,** by delivering a true copy to the within named

**BUFFALO SH PARTNER I, LP BY DELIVERING TO COGENCY GLOBAL INC. BY DELIVERING TO JOLITA QUINDARA**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

My name is **Selena Cabrera**, my date of birth is ▮▮▮▮▮ and my address is **4023 Kennett Pike, Box 293, Wilmington, DE 19807,** and **United States of America**. I declare under penalty of perjury that the foregoing is true and correct.

Executed in **New Castle** County, State of **DE**, on **May 08, 2020**.

_____
Selena Cabrera

**4**

Filed
5/11/2020 12:00 AM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Katherine Cavazos

<span style="color:red">**SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK**</span>

### THE STATE OF TEXAS

### CITATION

TO:   IVY FUND MANAGER LLC
      REGISTERED AGENT HARVARD BUSINESS SERVICES INC
      16192 COASTAL HIGHWAY
      LEWES DE  19958

**NOTICE:**

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE** filed on **May 01, 2020,** a default judgment may be taken against you.

The case is presently pending before the **240TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **20-DCV-273174** and is styled:

**STEADY CAPITAL, LLC V. BUFFALO SH PARTNER I, LP AND IVY FUND MANAGER LLC**

The name and address of the attorney for **PLAINTIFF** is:

**TUANANH MAI
MAI & NA PLLC
6588 CORPORATE DRIVE SUITE 188
HOUSTON TX  77036
713-505-1637**

The nature of the demands of said **PLAINTIFF** is shown by a true and correct copy of the **PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 4th day of May, 2020.**

    **DISTRICT CLERK BEVERLEY MCGREW WALKER
    FORT BEND COUNTY, TEXAS**
    Physical Address:
    1422 Eugene Heimann Circle, Room 31004
    Richmond, Texas 77469
    Mailing Address:
    301 Jackson Street, Room 101
    Richmond, Texas 77469

    By: _Katherine Cavazos_
    Deputy District Clerk KATHERINE CAVAZOS
    Telephone: (281) 344-3959

20-DCV-273174                                    240th Judicial District Court
Steady Capital, LLC v. Buffalo SH Partner I, LP and Ivy Fund Manager LLC

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at ____ o'clock ____M.

Executed at _____, within the County of _____

_____, at ____o'clock ___M. on the _____ day of _____

_____, 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy

of the petition, having first attached such copy of such petition to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _ citation at $80.00 each  $_____

_____
                         Name of Officer or Authorized Person

_____County, Texas

By:_____
                         Signature of Deputy or Authorized Person

*State day and hour and place of serving each person.

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The return is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,
                         (First, Middle, Last)

my date of birth is_____, and my address is _____
                                                                              (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the _____

day of _____.

_____
                         Declarant / Authorized Process Server

_____
                         (Id # & expiration of certification)

**ORIGINAL**

Citation issued to Ivy Fund Manager LLC on 5/4/2020.

## CAUSE NO. 20-DCV-273174

| | | |
|---|---|---|
| Steady Capital, LLC | § | IN THE COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| Buffalo SH Partner I,LP, et al | § | |
| Defendant. | § | 240TH JUDICIAL DISTRICT COURT |

### AFFIDAVIT OF SERVICE

"The following came to hand on **May 4, 2020, 1:00 pm,**

### CITATION - PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE,

and was executed at **16192 Coastal Hwy, Lewes, DE 19958** within the county of **Sussex** at **10:23 AM** on **Fri, May 08 2020,** by delivering a true copy to the within named

**IVY FUND MANAGER LLC BY DELIVERING TO HARVARD BUSINESS SERVCIES, INC., ACCEPTED BY GARY DAMIANI,**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

My name is **Selena Cabrera**, my date of birth is ▆▆▆▆ and my address is **4023 Kennett Pike, Box 293, Wilmington, DE 19807**, and **United States of America**. I declare under penalty of perjury that the foregoing is true and correct.

Executed in **New Castle** County, State of **DE**, on **May 08, 2020.**

_____
Selena Cabrera

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STEADY CAPITAL, LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **BUFFALO SH PARTNER I, LP and IVY** | § | |
| **FUND MANAGER, LLC** | § | |
| | § | |
| *Defendants.* | § | |

## <u>LISTING OF COUNSEL OF RECORD</u>

**Counsel for Plaintiff,**
**Steady Capital, LLC**

Pete Mai
Sate Bar No. 24029702
John Na
State Bar No. 24074786

Mai & Na PLLC
6588 Corporate Drive, Suite 188
Houston, Texas 77036
Telephone: (713) 505-1637
Facsimile: (832) 553-2689
pete@mnnlawfirm.com
john@mnnlawfirm.com

**Counsel for Defendants, Buffalo Partner**
**I LP and Ivy Fund Manager, LLC**

James H. Billingsley
State Bar No. 00787084
SDTX No. 19633
Caitlin J. Morgan
State Bar No. 24074757
SDTX No. 2228657

Polsinelli, PC
2950 N. Harwood Street, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
jbillingsley@polsinelli.com
cmorgan@polsinelli.com