## MEMBERSHIP INTEREST PLEDGE AND SECURITY AGREEMENT

This MEMBERSHIP INTEREST PLEDGE AND SECURITY AGREEMENT (the "Agreement") is made effective as of December 31, 2018 (the "Effective Date"), by and among **STEADY CAPITAL, LLC**, a Texas limited liability company ("Secured Party"), and **BUFFALO SH PARTNER I, LP**, a Delaware limited partnership ("Pledgor").

### RECITALS:

WHEREAS, Secured Party has made a loan (the "Loan") in the principal sum of THREE MILLION AND 00/100 DOLLARS ($3,000,000.00) to **BUFFALO SH PARTNER I, LP**, a Delaware limited partnership (also sometimes called the "Borrower"), which Loan is evidenced by that certain Promissory Note dated as of even date herewith in the principal amount of THREE MILLION AND 00/100 DOLLARS ($3,000,000.00)  (as amended, modified or supplemented and in effect from time to time, the "Note") issued by Borrower to Secured Party pursuant to that certain Loan Agreement dated as of even date herewith (as amended, modified or supplemented and in effect from time to time, the "Loan Agreement") (this Agreement, the Loan Agreement, together with the Note, and any other documents and instruments executed in connection with the Loan being hereinafter referred to, collectively, as the "Loan Documents");

WHEREAS, as of the effective date hereof, the Pledgor is the owner of ONE HUNDRED AND 00/100 PERCENT (100.00) of the limited liability company membership interests in IVY BUFFALO I, LLC, a Delaware limited liability company (the "Company").

WHAREAS, the Company is the owner of FIFTY AND 00/100 PERCENT (50.00%) of the limited liability company membership interests in **HERRON DRIVE ASSOCIATES LLC**, a Delaware limited liability company (the "Project Company"), and the Company is the sole Managing Member of the Project Company.

WHEREAS, the Project Company owns and operates a student housing property commonly referred to as "Block 20", containing approximately 640 beds within approximately 224 apartments, located in Amherst, New York (the "Property").

WHEREAS, in connection with and in consideration for the Loan to Borrower (the sufficiency of which is hereby acknowledged by Pledgor), Pledgor has agreed to pledge all right, title and interest in and to the ONE HUNDRED AND 00/100 PERCENT (100.00%) of the Membership Interests it holds in the Company to Secured Party pursuant to this Agreement; and

NOW, THEREFORE, in consideration of the premises and intending to be legally bound hereby, Pledgor hereby agrees as follows:

1.      Pledge.  Pledgor hereby pledges to Secured Party, and grants to Secured Party a security interest in and to the following:


PLAINTIFF'S EXHIBIT
**4-D**

-2-

(a)     ONE HUNDRED AND 00/100 PERCENT (100.00%) of the Membership Interests in the Company (the "Pledged Collateral"), and all dividends, profits, income, cash, receipts, instruments, distributions (whether in cash or in kind property) and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Collateral; and

(b)     to the extent not covered by clause (a) above, all proceeds of any or all of the foregoing Pledged Collateral.

For purposes of this Agreement, the term "proceeds" shall include whatever is receivable or received when Pledged Collateral or proceeds thereof are sold, exchanged, collected or otherwise disposed of, whether such disposition is voluntary or involuntary, and shall include, without limitation, proceeds of any indemnity or guaranty payable to Pledgor from time to time with respect to any of the Pledged Collateral.

2.     Security for Obligations.   This Agreement secures all of the obligations of Pledgor under the Loan Documents and this Pledge (all such obligations being collectively referred to herein as the "Obligations").

3.     Delivery of Pledged Collateral.   Secured Party shall have the right, at any time in Secured Party's discretion after an Event of Default (as defined below) and without notice to Pledgor, to make any and all filings, transfers, or registrations in the name of Secured Party or any of Secured Party's nominees, to perfect its security interest and enforcement rights with respect to any or all of the Pledged Collateral, subject only to the revocable rights specified in Section 6(a).

4.     Representations and Warranties.   Pledgor covenants, represents, warrants and agrees as follows:

(a)     The Membership Interests have been duly authorized and are validly issued.

(b)     Pledgor is the legal and beneficial owner of the Pledged Collateral free and clear of any liens, security interests, options or other charges or encumbrances, except for the security interest created by this Agreement.

(c)     Upon the filing of the Uniform Commercial Code Financing Statement with respect to the Pledged Collateral, the pledge of the Membership Interests pursuant to this Agreement creates a valid and perfected first priority security interest in the Pledged Collateral, securing the payment of the Obligations.

(d)     Subject to such other consents or approvals which have been obtained, no consent of any other person or entity and no authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required

-3-

(i) for the pledge by Pledgor of the Pledged Collateral pursuant to this Agreement or for the execution, delivery or performance of this Agreement by Pledgor, (ii) for the perfection or maintenance of the security interest created hereby (including the first priority nature of such security interest), or (iii) for the exercise by Secured Party of the voting or other rights provided for in this Agreement or the remedies in respect of the Pledged Collateral pursuant to this Agreement (except as may be required in connection with any disposition of any portion of the Pledged Collateral by laws affecting the offering and sale of securities generally).

(e)     The Pledged Collateral constitutes ONE HUNDRED AND 00/100 PERCENT (100.00%) of the membership interests of the Company, there are no other members of the Company, and all of the membership interests of the Company are owned by Pledgor.

(f)     The Company owns FIFTY AND 00/100 PERCENT (50.00%) of the membership interests of the Project Company, the only members of the Project Company are owned by Pledgor and WISDOM B VENTURES, LLC, a _____ limited liability company, and the Company is the sole Managing Member of the Project Company.

(g)     There are no conditions precedent to the effectiveness of this Agreement that have not been either satisfied or waived.

(h)     Pledgor has, independently and without reliance upon Secured Party, and based upon such documents and information as Pledgor has deemed appropriate, made his own credit analysis and decision to enter into this Agreement.

(i)     Pledgor shall obtain the prior written consent, which consent shall not be unreasonably withheld, of Secured Party before voting or consenting to create, incur, or permit to exist any pledge, mortgage, lien, charge, encumbrance or any security interest whatsoever in or with respect to the Pledged Collateral, or any material amendment or modification of the Loan Documents.

(j)     The Company is duly organized, validly existing and in good standing under the laws of the State of Delaware.

(k)     The Project Company is duly organized, validly existing and in good standing under the laws of the State of Delaware.

(l)     No consent by the Company is necessary or required in connection with the pledge of the Pledged Collateral by Pledgor, or if required, has been obtained.

(m)     No consent by the Project Company is necessary or required in connection with the pledge of the Pledged Collateral by Pledgor, or if required, has been obtained.

5.     <u>Further Assurances</u>.  Pledgor agrees that at any time and from time to time, at the sole cost and expense of Pledgor, Pledgor will promptly execute and deliver all further

-4-

reasonable instruments and documents, and take all further reasonable action, that may be necessary or desirable, or that Secured Party may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Secured Party to exercise and enforce Secured Party's rights and remedies hereunder with respect to any Pledged Collateral.

6.    <u>Voting Rights</u>.

(a)    So long as no Event of Default or event which, with the giving of notice or the lapse of time, or both, would become an Event of Default shall have occurred and be continuing, Pledgor shall be entitled to exercise or refrain from exercising any and all voting and other consensual rights pertaining to the Pledged Collateral or any part thereof for any purpose not inconsistent with the terms of this Agreement or any of the other Loan Documents; <u>provided</u>, <u>however</u>, that Pledgor shall, as a member, not exercise or refrain from exercising any such right if, in Secured Party's reasonable judgment, such action would have a material adverse effect on the value of the Pledged Collateral or any part thereof, and, <u>provided</u>, <u>further</u>, that Pledgor shall give Secured Party at least three (3) business days' written notice of the manner in which Pledgor intends to exercise, or the reasons for refraining from exercising, any such right, if such voting or other consensual rights, if so exercised, may materially affect the value of the Pledged Collateral.

(b)    Upon the occurrence and during the continuance of an Event of Default or an event which, with the giving of notice or the lapse of time, or both, would become an Event of Default all rights of Pledgor to exercise or refrain from exercising the voting and other consensual rights which Pledgor would otherwise be entitled to exercise pursuant to Section 6(a) shall, upon notice to Pledgor by Secured Party, cease.

7.    <u>Transfers and Other Liens; Additional Shares</u>.  Pledgor agrees that it will not (i) sell, assign (by operation of law or otherwise) or otherwise dispose of, or grant any option with respect to, any of the Pledged Collateral, or (ii) create or permit to exist any lien, security interest, option or other charge or encumbrance upon or with respect to any of the Pledged Collateral, except for the security interest under this Agreement.

8.    <u>Secured Party Appointed Attorney-in-Fact</u>.  Upon an Event of Default, Pledgor hereby appoints Secured Party as Pledgor's attorney-in-fact, with full authority in the place and stead of Pledgor and in the name of Pledgor or otherwise, from time to time in Secured Party's sole discretion, to take any action and to execute any instrument which Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement (subject to the rights of Pledgor under Section 6 of this Agreement), including, without limitation, to receive, indorse and collect all instruments made payable to Pledgor representing any dividend or other distribution in respect of the Pledged Collateral or any part thereof and to give full discharge for the same.

9.    <u>Secured Party May Perform</u>.  If Pledgor fails to perform any agreement contained herein following the expiration of any applicable grace period, Secured Party may perform, or cause performance of, any such agreement, and the reasonable expenses of Secured Party incurred in connection therewith (including attorneys' fees and expenses) shall be payable by

-5-

Pledgor to Secured Party pursuant to the provisions of Section 13 hereof.

10.   <u>Secured Party's Duties</u>.  The powers conferred on Secured Party hereunder are solely to protect Secured Party's interest in the Pledged Collateral and shall not impose any duty upon Secured Party to exercise any such powers.  Except for the safe custody of any Pledged Collateral in Secured Party's possession and the accounting for moneys actually received by Secured Party hereunder, Secured Party shall have no duty as to any Pledged Collateral, as to ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Pledged Collateral, whether or not Secured Party has or is deemed to have knowledge of such matters, or as to the taking of any necessary steps to preserve rights against any parties or any other rights pertaining to any Pledged Collateral. Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of any Pledged Collateral in Secured Party's possession if such Pledged Collateral is accorded treatment substantially equal to that which Secured Party accords Secured Party's own property.

11.   <u>Remedies upon Default</u>.  If any Event of Default shall have occurred and be continuing:

(a)   Secured Party may exercise in respect of the Pledged Collateral, in addition to other rights and remedies provided for herein or otherwise available to Secured Party at law or in equity, all of the rights and remedies of a secured party on default under the Uniform Commercial Code in effect in the State of Delaware or New York at that time (the "Code") (whether or not the Code applies to the affected Pledged Collateral), and may also, without notice except as specified below, sell the Pledged Collateral or any part thereof in one or more parcels at public or private sale, at any exchange, broker's board or at any of Secured Party's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as Secured Party may deem commercially reasonable.  Pledgor agrees that, to the extent notice of sale shall be required by law, at least ten (10) days' notice to Pledgor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification.  Secured Party shall not be obligated to make any sale of Pledged Collateral regardless of notice of sale having been given.  Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(b)   Any cash held by Secured Party as Pledged Collateral and all cash proceeds received by Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Pledged Collateral may, in the sole discretion of Secured Party, be held by Secured Party as collateral for, and/or then or at any time thereafter be applied (after payment of any amounts payable to Secured Party pursuant to Section 13) in whole or in part by Secured Party against, all or any part of the Obligations in such order as Secured Party shall elect.  Any surplus of such cash or cash proceeds held by Secured Party and remaining after payment in full of all the Obligations shall be paid over to Pledgor or to whomsoever may be lawfully entitled to receive such surplus.

-6-

12.    <u>Event of Default</u>.  The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a)    If there shall occur any breach, failure or violation by Pledgor in the payment or performance of any of Pledgor's obligations, covenants or warranties under the Loan Documents; or

(b)    If there shall occur any Event of Default by Pledgor of the Obligations;

13.    <u>Expenses</u>.  Pledgor will, upon demand, pay to Secured Party the amount of any and all reasonable expenses, including the reasonable fees and expenses of Secured Party's counsel and of any experts and agents, which Secured Party may incur in connection with (i) the preparation and administration of this Agreement, (ii) the custody or preservation of, or the sale of, collection from, or other realization upon, any of the Pledged Collateral, (iii) the exercise or enforcement of any of the rights of Secured Party hereunder, or (iv) the failure by Pledgor to perform or observe any of the provisions hereof.

14.    <u>Security Interest Absolute</u>.  All rights of Secured Party and security interests hereunder, and all obligations of Pledgor hereunder, shall be absolute and unconditional irrespective of:

(a)    any manner of application of collateral, or proceeds thereof, to all or any of the Obligations, or any manner of sale or other disposition of any collateral for all or any of the Obligations or any other assets of Pledgor; or

(b) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Pledgor or a third party pledgor.

15.    <u>Amendments, Etc</u>.  No amendment or waiver of any provision of this Agreement, and no consent to any departure by Pledgor therefrom, shall in any event be effective unless the same shall be in writing and signed by Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

16.    <u>Notices</u>.    Any notice, election, demand, request or other document or communication required or permitted under this Agreement shall be in writing and shall be deemed sufficiently given only if delivered in person or sent by certified or registered mail, postage prepaid, return receipt requested, addressed to Secured Party or Pledgor, as the case may be, as follows:

<u>If to Pledgor</u>:

Ivy Fund Manager LLC
Attn:  Shangxuan Tan
140 Shawmut Avenue, Suite 2A
Boston, MA  02118
Email: tanshangxuan@oc-ventures.com

-7-

If to Secured Party:

      Steady Capital, LLC
      Attn: Alex Weng
      4622 Riverstone Blvd.
      Missouri City, Texas  77459
      E-mail:  alex.weng@gpi-investment.com

17.  Continuing Security Interest; Assignments under Credit Agreement.  This Agreement shall create a continuing security interest in the Pledged Collateral and shall (i) remain in full force and effect until the Pledgor's payment in full of, or his express written release by Secured Party from, the Obligations and all other amounts payable under this Agreement, (ii) be binding upon and inure to the benefit of Pledgor, and Pledgor's respective heirs, legal representatives, successors and assigns, and (iii) inure to the benefit of, and be enforceable by, and be binding upon Secured Party and Secured Party's heirs, legal representatives, successors, transferees and assigns.  Without limiting the generality of the foregoing clause (iii), Secured Party may assign or otherwise transfer all or any portion of Secured Party's rights under the Loan Documents to any other person or entity, and such other person or entity shall thereupon become vested with all the benefits in respect thereof granted to Secured Party herein or otherwise and charged with the obligations and responsibilities of Pledgor thereunder.  Upon the payment in full of all amounts due and payable under this Agreement and the release of Pledgor from the Obligations, the security interest granted hereby shall terminate and all rights to the Pledged Collateral shall revert to Pledgor.  Upon any such termination, Secured Party will, at Pledgor's expense, promptly return to Pledgor such of the Pledged Collateral as shall not have been sold or otherwise applied pursuant to the terms hereof and execute and deliver to Pledgor such documents as Pledgor shall reasonably request to evidence such termination.

18.  Governing Law; Terms.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas.  Pledgor, on behalf of himself and his respective heirs, legal representatives, successors and assigns, irrevocably consents that any legal action or proceeding against them under, arising out of, or in any manner relating to, this Agreement, may be brought in any court presiding in the State of Texas.  Pledgor, by execution and delivery of this Agreement and on behalf of himself and his respective heirs, legal representatives, successors and assigns, expressly and irrevocably consents and submits to the personal jurisdiction of any of such courts in any such action or proceeding.  Pledgor, on behalf of himself and his respective heirs, legal representatives, successors and assigns, further irrevocably consents to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to any of them by hand or by certified mail, delivered or addressed to Pledgor's address set forth herein.  Pledgor, on behalf of himself and his respective heirs, legal representatives, successors and assigns, hereby expressly and irrevocably waives any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue or forum non conveniens or any similar basis. Nothing in this paragraph shall affect or impair in any manner or to any extent the right of Secured Party or Secured Party's heirs, legal representatives, successors or assigns, to commence legal proceedings or otherwise proceed against Pledgor in any jurisdiction or to serve process in any

-8-

manner permitted by law.  Pledgor hereby waives all right to require a marshalling of assets by Secured Party.

19.    <u>Irrevocable Proxy</u>.  Pledgor hereby irrevocably constitutes and appoints Secured Party, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote the Membership Interests and any and all other equity interests in the Companies, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired (the Membership Interests together with all such other equity interests, the "Borrower's Interests"), with respect to any Article 8 Matter (as hereinafter defined).  The foregoing proxy shall include the right to sign Pledgor's name (as member of Property Owner) to any consent, certificate or other document relating to each Company that applicable law may permit or require, to cause the Borrower's Interests to be voted in accordance with the preceding sentence.  Pledgor hereby revokes all other proxies and powers of attorney with respect to the Borrower's Interests that Pledgor may have appointed or granted, to the extent such proxies or powers extend to any Article 8 Matter.  Pledgor will not give a subsequent proxy or power of attorney (and if given, will not be effective) or enter into any other voting agreement with respect to the Pledgor's Interests with respect to any Article 8 Matter.  Unless and until there is an Event of Default, Secured Party will not exercise his voting rights under this proxy.  As used herein, "Article 8 Matter" means any action, decision, determination or election by each Company's or its member(s) that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Uniform Commercial Code, and all other matters related to any such action, decision, determination or election.

**THE PROXIES AND POWERS GRANTED BY PLEDGOR PURSUANT TO THIS AGREEMENT ARE COUPLED WITH AN INTEREST AND ARE GIVEN TO SECURE THE PERFORMANCE OF THE PLEDGOR'S OBLIGATIONS UNDER THIS PLEDGE AGREEMENT**

[THE NEXT PAGE IS THE SIGNATURE PAGE]

-9-

IN WITNESS WHEREOF, Pledgor has caused this Agreement to be duly executed and delivered as of the date first above written.

PLEDGOR:

**BUFFALO SH PARTNER I, LP**, a Delaware limited partnership

By:    Ivy Fund Manager, LLC, a Delaware limited liability company, its sole general partner

By: *Shaofan Zhang*
        Shaofan Zhang, Manager and Chief Executive Officer

SECURED PARTY:

**STEADY CAPITAL, LLC** a Texas limited liability company

By:_____
Printed Name:_____
Title:_____

-9-

IN WITNESS WHEREOF, Pledgor has caused this Agreement to be duly executed and delivered as of the date first above written.

PLEDGOR:

**BUFFALO SH PARTNER I, LP**, a
Delaware limited partnership

By:    Ivy Fund Manager, LLC, a Delaware
        limited liability company, its sole
        general partner

By:_____

        Shaofan Zhang, Manager and
        Chief Executive Officer

SECURED PARTY:

**STEADY CAPITAL, LLC** a Texas limited
liability company

By:_____

    Ruoxu Hu,
    Manager and Chief Executive Officer
